# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| ENTERTAINMENT USA, INC., | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:18-CV-317-HAB |
| THE CELLULAR CONNECTION, LLC f/k/a MOOREHEAD COMMUNICATIONS, INC., | |
| Defendant. | |

## OPINION AND ORDER

The Defendant, The Cellular Connection, LLC f/k/a Moorehead Communications, Inc. (Moorehead), has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on res judicata grounds. Moorehead argues that the litigation repeats allegations that the Plaintiff, Entertaining USA, Inc. d/b/a One Wireless World (OWW)[1] filed against Moorehead in 2012, which were resolved in favor of Moorehead and affirmed on appeal.

For the reasons stated in this Opinion and Order, the Court will deny Moorehead's Motion to Dismiss [ECF No. 7].

---

[1] As both parties use OWW throughout their briefing, the Court will do the same.

**BACKGROUND AND COMPLAINT ALLEGATIONS**

OWW operated as a cell phone wholesaler and licensor. It had a network of affiliated dealers and retail stores in central Pennsylvania. OWW was a wholesaler for ATT/Cingular and Sprint/Nextel, later focusing exclusively on Sprint Nextel.

Moorehead is a Verizon master agent based out of Indiana. Moorehead wanted to expand its presence in central Pennsylvania. Partnering with OWW could accomplish this goal, but if OWW added Verizon to its offerings, OWW might lose revenue to be gained from offering services through other carriers. In 2006, the parties entered into a "referral agreement" (the Agreement) intended to memorialize their understanding that OWW would refer some of its stores to Moorehead as potential Verizon stores. In return, Moorehead agreed to pay OWW a "referral bonus" for each new Verizon activation that resulted, regardless of whether the referred stores continued to offer service with other carriers.

**A.     The 2012 Litigation**

In 2012, OWW sued Moorehead in federal district court, alleging that it breached the Agreement by discontinuing payments in 2008. OWW also requested an equitable accounting, and claimed that Moorehead had been unjustly enriched. The terms of the contract were litigated and decided through partial summary judgment and a bench trial.

Although the findings on liability could have entitled OWW to recovery, OWW failed to prove its damages with any certainty, as was required by Indiana law. "[OWW] hasn't proved that it was paid any less than it should have been. This record doesn't support a damages award in any amount." *Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, No. 1:12-CV-116 RLM, 2017 WL 3432319, at *16 (N.D. Ind. Aug. 9, 2017). Because the plaintiff failed to prove its damages with any certainty, despite the full use of the discovery process, the district court also denied an equitable accounting. *Id.* at *17. As a result, the district court ruled that "Entertainment USA, Inc. . . . shall take nothing by its complaint." *Id.*

On appeal, the Seventh Circuit focused on the damages issue as a dispositive one that was "sufficient to decide virtually all of this appeal." *Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, 897 F.3d 786, 792 (7th Cir. 2018). It concluded that, "[r]egardless of the scope of potential liability under the referral agreement, Entertainment USA did not show the district court that it was entitled to any recovery." *Id.* at 795. Because OWW had not proven its damages with reasonable certainty, despite "equal means of knowledge" through discovery, it was not entitled to the equitable remedy of an accounting as a "second attempt at proving its damages." *Id.* at 796. The Seventh Circuit added the following footnote:

> At oral argument we raised the possibility that under the district court's duration analysis—that the referral agreement remained in force "as long as any referred location was producing activations," 2017 WL 3432319, at *6—Moorehead may have had an ongoing post-trial duty to pay referral fees in 2016 and beyond that an equitable accounting would reveal. Entertainment USA did not fail

3

to "make the substantive argument" on this point in either the district court or on appeal, so the argument has not been forfeited. *See Dixon v. ATI Ladish LLC*, 667 F.3d 891, 895 (7th Cir. 2012), citing *Elder v. Holloway,* 510 U.S. 510 (1994), and *FDIC v. Wright*, 942 F.2d 1089, 1094–95 (7th Cir. 1991). However, given that an equitable accounting is a remedy left to the sound discretion of the trial court in the first instance, and given that Entertainment USA did not ask the district court to clarify the prospective implications of its ruling, we decline to reach that issue here. We do not express an opinion on this question beyond observing that the general rule in Indiana is that "a contract containing no specific termination date is terminable at will." *See City of East Chicago, Ind. v. East Chicago Second Century, Inc.*, 908 N.E.2d 611, 623 (Ind. 2009), citing *House of Crane, Inc. v. H. Fendrich, Inc.*, 256 N.E.2d 578 (1970).

*Id.* at 796 n.5 (parallel citations omitted).

**B.     The Current Litigation**

On October 4, 2018, Entertainment USA, Inc., which does business as OWW, filed a Complaint against The Cellular Connection, LLC f/k/a Moorehead Communications, Inc. The Complaint sets forth the same General Allegations contained in the 2012 complaint. Additionally, the Complaint recites findings the district court made in the 2012 Litigation, including the finding that the parties intended the Agreement to live on as long as any referred location was producing activations. The Complaint identifies four locations that OWW referred to Moorehead and alleges that, following the trial in the 2012 litigation, these four "Referred Locations were open and producing activations and upgrades" that warranted payment of a referral fee. (Compl., ¶ 16.) According to the Complaint, "[d]espite multiple demands, Moorehead failed and refused to tender any sums

4

to OWW, or to provide an accounting to OWW depicting the number of post-trial activations and upgrades for the Referred Locations." (*Id.* ¶ 17.)

The Complaint asserts that Moorehead has breached the Agreement by refusing to tender payments due (Count I–Breach of Contract). It also requests equitable relief in the form of an order requiring Moorehead to provide OWW with an ongoing monthly accounting of all future upgrades in connection with the Referred Locations because the accounts and business records necessary to determine the true sum due to OWW going forward are under the possession and control of Moorehead (Count II–Accounting).

**STANDARD OF REVIEW**

When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court must accept the factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Under the liberal notice pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed facts, but surviving a Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the

5

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Claim preclusion is an affirmative defense. Fed. R. Civ. P. 8(c). A plaintiff is not required to anticipate affirmative defenses in his complaint, and his failure to do so typically does not entitle a defendant to dismissal under Rule 12(b)(6). *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). A defendant may, however, properly raise claim preclusion in a motion to dismiss when it is "clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)); *see also Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008).

## ANALYSIS

The preclusive effect of a prior judgment by a federal court sitting in diversity is governed by "federal common law," which provides for the application of the law of the state in which the federal court sits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Accordingly, Indiana's claim preclusion law will apply, unless it "is incompatible with federal interests." *Id.* at 509; *see also Allan Block Corp. v. Cty. Materials Corp.*, 512 F.3d 912, 915 (7th Cir. 2008). In Indiana, claim preclusion applies where four requirements are satisfied: (1) the former judgment must have been rendered by a court of competent

6

jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. *Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1173 (Ind. Ct. App. 2006) (citing *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005)). When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1195 (Ind. Ct. App. 2003). "In determining whether the doctrine should apply, it is helpful to inquire whether identical evidence will support the issues involved in both actions." *Id.* (citing *Richter v. Asbestos Insulating & Roofing*, 790 N.E.2d 1000, 1002–03 (Ind. Ct. App. 2003)).

Here, the parties dispute whether the matter now in issue was, or could have been, determined in the 2012 action. Moorehead argues that OWW's claims arise from the same core of operative facts and the same transaction as OWW's claims in the 2012 Litigation: that OWW referred locations to Moorehead and Moorehead failed to pay amounts due to OWW under the Agreement. Moorehead acknowledges that OWW is now seeking referral fees that it contends were earned after the trial in the 2012 Litigation. However, Moorehead claims that a review of the pleadings and testimony in the 2012 Litigation shows that OWW already sought, and was denied, future damages in that litigation when the district court

7

ruled that OWW failed to prove that any of the Referred Locations continued operating.

OWW disagrees, noting that the breaches at issue in this lawsuit "did not exist" at the time of the 2012 Litigation, and were not litigated or decided. (Mem. in Opp'n 5, ECF No. 11.) "What was decided was Moorehead's post-trial obligation to make referral payments for all referred locations so long as the location was open and producing activations and upgrades." (*Id.*) The current litigation, which only seeks to recover for payments from a different time period, must be considered a new cause of action.

Because "[a] claim for payments accruing subsequent to a previous judgment is considered a different cause of action," *Wedel v. Am. Elec. Power Serv. Corp.*, 681 N.E.2d 1122, 1131 (Ind. Ct. App. 1997) (citing *Booher v. Richmond Square, Inc.*, 310 N.E.2d 89, 92 (1974)), there is support for OWW's position. Only by relying on judicial notice could the Court, at this stage of the proceedings, find that OWW's suit is barred as a matter of law.

A court may take judicial notice of public court documents and may consider those documents along with the allegations in the complaint without converting a motion to dismiss to a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). A court may take judicial notice of an adjudicative fact that is both "not subject to reasonable dispute" and either 1) "generally known within the trial court's territorial jurisdiction" or 2) "can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned." Fed. R. Evid. 201(b). "Judicial notice is premised on the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof from the opposing parties. It is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997). "Typically . . . , because of the indisputability requirement, the notice of a court order is limited to the purpose of recognizing the judicial act or litigation filing; judicial notice is generally not for the truth of the matters asserted in a court document." *ABN AMRO, Inc. v. Capital Int'l Ltd.*, No. 04 C 3123, 2007 WL 845046, at *9 (N.D. Ill. Mar. 16, 2007) (first citing *Global Relief Found. v. N.Y. Times Co.*, No. 01 C 8821, 2002 WL 31045394, at *4 (N.D. Ill. Sept. 11, 2002); then citing *Gen. Elec. Capital Corp.*, 182 F.3d at 1081 n.6).

Here, the facts readily ascertainable from the public court record that are not subject to reasonable dispute do not extend to the facts necessary to determine whether claim preclusion bars OWW's suit. The court found in the 2012 Litigation that the Agreement remained in force so long as referred locations were producing activations. While the court found that the evidence presented during the 2012 Litigation did not support an award of damages based on the facts of that case, it cannot be said that such a determination conclusively established that there could not be a claim for damages for any future activations. It is likely that contemplation of the entire context of the case, or at

9

least contemplation of much more than is proper to consider at the pleading stage, will be necessary to make a definitive ruling on the Defendant's affirmative defense. This is true particularly where it is plausible to assert that referral payments are not lawfully due until they are earned. Even the Seventh Circuit, when it stated that the district court's holding meant that Moorehead might have had an ongoing post-trial duty to pay referral fees in 2016 and beyond, noted that the prospective implications of that ruling had not been clarified. This Court, likewise, cannot at this stage of the litigation determine the implications of that ruling and consider any facts associated with it to be "not subject to reasonable dispute."

## CONCLUSION

For the reasons stated above, the Court DENIES Moorehead's Motion to Dismiss [ECF No. 7]. The Defendant's Answer is due by June 7, 2019.

SO ORDERED on May 16, 2019.

      s/ *Holly A. Brady*
      JUDGE HOLLY A. BRADY
      UNITED STATES DISTRICT COURT