**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| ENTERTAINMENT USA, INC., | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:18-CV-317-HAB |
| THE CELLULAR CONNECTION, LLC f/k/a MOOREHEAD COMMUNICATIONS, INC., | |
| Defendant. | |

**OPINION AND ORDER**

Defendant, The Cellular Connection, LLC f/k/a Moorehead Communications, Inc. (Moorehead), has filed a Motion for Summary Judgment [ECF No. 37]. Moorehead argues that this litigation is an attempt by Plaintiff Entertaining USA, Inc. d/b/a One Wireless World (OWW) to relitigate a breach of contract claim and a request for accounting that Plaintiff filed against Moorehead in 2012, which was resolved in favor of Moorehead and affirmed on appeal. OWW has not filed a response.

**FACTUAL BACKGROUND**

**A.    The 2012 Litigation**

In 2012, OWW sued Moorehead in federal district court (the "2012 Complaint"), alleging that it breached the parties' 2006 Referral Agreement, which required Moorehead to pay OWW a fee for each cellular activation and upgrade resulting from OWW referrals to Moorehead. The 2012 Complaint included three counts against

Moorehead: breach of contract; accounting; and unjust enrichment. The requested accounting would show all activations and upgrades at any locations covered by the Referral Agreement.

The terms of the Referral Agreement were litigated and decided through partial summary judgment and a bench trial. In its request for summary judgment, OWW sought more than $23 million for past referral fees and an injunction requiring Moorehead to continue to pay referral fees in the future. *Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, 93 F. Supp. 3d 915, 922 (N.D. Ind. 2015). In deciding the motion, the district court rejected OWW's pursuit of referral fees based solely on the referral of the individuals and entities, rather than locations. *Id.*, 93 F. Supp. 3d at 926 ("Looking at the Referral Agreement as a whole, it is clear that the parties intended 'referrals' to mean only referred locations, and not referred individuals or entities."). However, genuine issues of material fact remained for trial on the breach of contract claim, including which types of service and service plans constituted "activations" under the Referral Agreement and at which point the parties' contractual obligation terminated. The court also found a question of fact with respect to the accounting claim because, until the finder of fact determined the Referral Agreement's duration, it was premature to decide the accounting claim. *Id.* at 933. The district court granted summary judgment in Moorehead's favor on OWW's unjust enrichment claim.

In August 2016, the remaining claims proceeded to a bench trial. At trial, OWW sought damages for referral fees accruing up to the date of trial. It also sought referral

fees accruing after the date of trial and going forward until a referred location ceased doing business and having activations and upgrades. OWW also pursued its claim for an accounting to show the activations and upgrades.

The court found that Moorehead and OWW intended an agreement that would live on as long as any referred location was producing activations. *Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, No. 1:12-CV-116 RLM, 2017 WL 3432319, at *6 (N.D. Ind. Aug. 9, 2017). The court identified twelve locations for which Moorehead was obligated to pay referral fees (Etown, Wireless Extreme, Smithmeyer Network, Street Kicks, ZHY Wireless, York, Lancaster Wireless. Red Lion, Shrewsbury, Global Solutions, Cellular Nation, and Triangle Communications) for as long as those stores produced two-year activations and reactivations. *Id.* at *13.

Although the findings on liability could have entitled OWW to recovery, the court found that OWW failed to prove its damages with any certainty, as was required by Indiana law. "[OWW] hasn't proved that it was paid any less than it should have been. This record doesn't support a damages award in any amount." *Id.*, 2017 WL 3432319, at *16. Because the plaintiff failed to prove its damages with any certainty, despite the full use of the discovery process, the district court also denied an equitable accounting. *Id.* at *17. As a result, the district court ruled that OWW "shall take nothing by its complaint." *Id.*

On appeal, the Seventh Circuit focused on the damages issue as a dispositive one that was "sufficient to decide virtually all of this appeal." *Entm't USA, Inc. v. Moorehead*

3

*Commc'ns, Inc.*, 897 F.3d 786, 792 (7th Cir. 2018). It concluded that, "[r]egardless of the scope of potential liability under the referral agreement, [OWW] did not show the district court that it was entitled to any recovery." *Id.* at 795. Because OWW had not proven its damages with reasonable certainty, despite "equal means of knowledge" through discovery, it was not entitled to the equitable remedy of an accounting as a "second attempt at proving its damages." *Id.* at 796.

**B.     The Current Litigation**

On October 4, 2018, Entertainment USA, Inc., which does business as OWW, filed a Complaint against The Cellular Connection, LLC f/k/a Moorehead Communications, Inc. The Complaint sets forth the same General Allegations contained in the 2012 Complaint. Additionally, the Complaint recites findings the district court made in the 2012 litigation, including the finding that the parties intended the Referral Agreement to live on as long as any referred location was producing activations. The Complaint identifies four (of the twelve) locations that OWW referred to Moorehead and alleges that, following the trial in the 2012 litigation, these four "Referred Locations were open and producing activations and upgrades" that warranted payment of a referral fee. (Compl., ¶ 16.) According to the Complaint, "[d]espite multiple demands, Moorehead failed and refused to tender any sums to OWW, or to provide an accounting to OWW depicting the number of post-trial activations and upgrades for the Referred Locations." (*Id.* ¶ 17.)

4

The Complaint asserts that Moorehead has breached the Agreement by refusing to tender payments due (Count I–Breach of Contract). It also requests equitable relief in the form of an order requiring Moorehead to provide OWW with an ongoing monthly accounting of all future upgrades in connection with the referred locations because the accounts and business records necessary to determine the true sum due to OWW going forward are under the possession and control of Moorehead (Count II–Accounting).

**ANALYSIS**

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). Claim preclusion and issue preclusion are affirmative defenses. Fed. R. Civ. P. 8(c) (referring to res judicata and estoppel). OWW has not filed a response to Moorehead's Motion, and the facts do not appear to be in dispute. Thus, Moorehead will be entitled to summary judgment if its designated evidence shows that OWW's claims are, as a matter of law, precluded.

The preclusive effect of a prior judgment by a federal court sitting in diversity is governed by "federal common law," which provides for the application of the law of the state in which the federal court sits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Accordingly, Indiana's claim preclusion law will apply, unless it "is incompatible with federal interests." *Id.* at 509; *see also Allan Block Corp. v. Cty. Materials Corp.*, 512 F.3d 912, 915 (7th Cir. 2008). "The doctrine of claim preclusion is premised on the idea that, when a claim has been fully litigated and come to judgment on the merits,

5

finality trumps." *In re Ingersoll, Inc.*, 562 F.3d 856, 861 (7th Cir. 2009). Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)); *Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1175 (Ind. Ct. App. 2006). Together, the "two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor*, 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153–154 (1979) (internal quotation marks and brackets omitted)).

In Indiana, claim preclusion applies where four requirements are satisfied: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. *Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1173 (Ind. Ct. App. 2006) (citing *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005)). When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1195 (Ind. Ct. App. 2003). "In determining whether the doctrine should apply, it is helpful to inquire whether identical evidence will support the issues involved

in both actions." *Id.* (citing *Richter v. Asbestos Insulating & Roofing*, 790 N.E.2d 1000, 1002–03 (Ind. Ct. App. 2003)).

In determining whether issue preclusion applies, courts apply a two-step analysis: "(1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case." *Afolabi*, 849 N.E.2d at 1175–76. Issue preclusion "does not extend to matters that were not expressly adjudicated and can be inferred only by argument." *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 704 (Ind. Ct. App. 2005).

OWW is seeking damages for referral fees from the date of the trial on the 2012 Complaint until the date of judgment in this case. Moorehead argues that OWW's claims are barred by issue preclusion because, in the 2012 litigation, the court found no evidence that the referred locations were operating through the date of trial. Moorehead asserts that OWW's claims are also barred by claim preclusion because OWW litigated its breach of contract and accounting claims, both for past and for future damages, in the prior litigation. The Court agrees.

In the prior litigation, OWW sought damages on the theory that it had not been paid for all activations at referral locations, and that these activations were ongoing. The court determined that OWW had not established that it was still owed money for activations through 2013. Additionally, the court determined that "nothing in the record" supported OWW's "thought that some referred location continued to produce referral

fees after" May 2013. *Entm't USA, Inc.*, No. 1:12-CV-116 RLM, 2017 WL 3432319, at *17. This finding was not altered by the Seventh Circuit's decision.

There can be no doubt based on the submissions from the prior litigation that OWW was seeking a ruling from the court that would extend to payments due into the future. For example, in OWW's motion for summary judgment, it confirmed that it was seeking judgment in the amount of $23,268,492.50 based on documents produced to the date of that request, along with a declaration that Moorehead "remained obligated to pay OWW for all ongoing activations and upgrades following the dates of the documents produced and into the future, for all of the referrals referenced" in its brief "that still operate and that still generate activations of any kind, and upgrades." (1:12-CV-116-RLM, ECF No. 87 at 36.)

There can also be no doubt that the ruling that Moorehead and OWW intended the referral agreement to live on as long as any referred location was producing activations is only helpful to OWW to the extent that any locations were, indeed, producing activations. To the extent that OWW would argue that the breaches at issue in this lawsuit did not exist at the time of the 2012 litigation, neither could they exist afterwards unless referred locations were open and producing activations and upgrades. But OWW was already given the chance, in the prior litigation, to prove that the locations were open and producing activations and upgrades during the period leading up to trial. It cannot relitigate whether these same referred locations were operating as of the previous trial date. It is not unfair to preclude OWW from ignoring that ruling so that it

can allege that locations were indeed active and therefore could support a breach of contract claim for unpaid referral fees. Because OWW's 2018 Complaint cannot succeed without that issue being resolved in its favor, which is an impossibility if the doctrines of claim and issue preclusion are to serve their intended goals of protecting against the expense and vexation attending multiple lawsuits, conserving judicial resources, and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions, Moorehead is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court GRANTS Moorehead's Motion for Summary Judgment [ECF No. 37]. The Clerk will enter judgment in favor of Defendant and against Plaintiff.

SO ORDERED on January 6, 2020.

                                             s/ *Holly A. Brady*
                                             JUDGE HOLLY A. BRADY
                                             UNITED STATES DISTRICT COURT